UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

DENNIS SCHULER II,

                    Plaintiff,

          v.

CAROLYN W. COLVIN, Acting
Commissioner of the Social Security
Administration,

                    Defendant.

CASE NO. 14-cv-05036 JRC

ORDER ON PLAINTIFF'S
COMPLAINT

    This Court has jurisdiction pursuant to 28 U.S.C. § 636(c), Fed. R. Civ. P. 73 and

Local Magistrate Judge Rule MJR 13 (*see also* Notice of Initial Assignment to a U.S.

Magistrate Judge and Consent Form, ECF No. 5; Consent to Proceed Before a United

States Magistrate Judge, ECF No. 8). This matter has been fully briefed (*see* ECF Nos.

13, 14, 15).

    After considering and reviewing the record, the Court finds that the ALJ provided

legally sufficient reasons for rejecting the opinion of plaintiff's treating rheumatologist,

by finding that it is not consistent with his own treatment records and not consistent with

other substantial evidence in the medical record which showed plaintiff engaging actively in gardening, riding bikes and having normal physical exams. The ALJ rejected plaintiff's allegations in part by finding that plaintiff overused his pain medication, despite being admonished not to do so, and by finding that plaintiff's allegations were inconsistent with his own self-reported statement in his treatment record, as well as being inconsistent with the medical evidence.

Therefore, this matter is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

BACKGROUND

Plaintiff, DENNIS SCHULER, II, was born in 1963 and was 47 years old on the amended alleged date of disability onset of May 1, 2010 (*see* Tr. 34-35, 116-119). Plaintiff did not complete high school, but did get his GED (Tr. 37).   Plaintiff raced motocross and a little car racing (Tr. 39).  He did some machinist work, but had another motorcycle/motocross accident "that was the onset and the start of all this" (Tr. 50-51).

According to the ALJ, plaintiff has at least "severe impairments related to anxiety, cognitive disorder not otherwise specified, inflammatory arthritis of the lower extremities, right knee injury, and chronic pain syndrome (20 CFR 416.920(c))" (Tr. 12).

At the time of the hearing, plaintiff was living with his girlfriend in his mother's rental house (Tr. 37-38).

PROCEDURAL HISTORY

Plaintiff's application for Supplemental Security Income ("SSI") benefits pursuant to 42 U.S.C. § 1382(a) (Title XVI) of the Social Security Act was denied initially and following reconsideration (*see* Tr. 57, 58, 59-62, 66-73). Plaintiff's requested hearing was

held before Administrative Law Judge Richard A. Say ("the ALJ") on August 7, 2012
(*see* Tr. 31-56). On August 17, 2012, the ALJ issued a written decision in which the ALJ
concluded that plaintiff was not disabled pursuant to the Social Security Act (*see* Tr.7-
23).

In plaintiff's Opening Brief, plaintiff raises the following issues:   (1) Did the ALJ
commit reversible error by rejecting Dr. Sager's opinion; (2) Did the ALJ commit
reversible error by finding plaintiff only partially credible; (3) Did the ALJ commit
reversible error by failing to consider Dr. Donahue's assessment of plaintiff's functional
limitations even though Dr. Donahue's opinion was given significant weight; and (4) Did
the ALJ commit reversible error by erroneously rejecting the opinions of James Patterson
(*see* ECF No. 13, pp. 8-9).

<u>STANDARD OF REVIEW</u>

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's
denial of social security benefits if the ALJ's findings are based on legal error or not
supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d
1211, 1214 n.1 (9th Cir. 2005) (*citing Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir.
1999)).

<u>DISCUSSION</u>

(1)     **Did the ALJ commit reversible error in his review of the medical
evidence**?

Plaintiff argues that the ALJ failed to provide adequate rationale for failing to
credit fully the opinions of his treating doctor, rheumatologist, Dr. D.S. Sager (*see*

Opening Brief, ECF No. 13, pp. 9-12; *see also* Tr. 344-45). The ALJ rejected Dr. Sager's opinion by finding that it is not consistent with Dr. Sager's own treatment records and also by finding that it is not consistent with the notes from Columbia pain management "which showed the claimant actively engaging in gardening, riding bikes with his grandkids, and having normal physical exams" (*see* Tr. 17).

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).  It is not the job of the court to reweigh the evidence: If the evidence "is susceptible to more than one rational interpretation," including one that supports the decision of the Commissioner, the Commissioner's conclusion "must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (*citing Morgan, supra,* 169 F.3d at 599, 601).   The ALJ may "draw inferences logically flowing from the evidence." *Sample, supra*, 694 F.2d at 642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F. Supp. 19, 20 (N.D. Cal. 1980)). However, an ALJ may not speculate. *See* SSR 86-8, 1986 SSR LEXIS 15 at *22.

"A treating physician's medical opinion as to the nature and severity of an individual's impairment must be given controlling weight if that opinion is well-supported and not inconsistent with the other substantial evidence in the case record." *Edlund v. Massanari*, 2001 Cal. Daily Op. Srvc. 6849, 2001 U.S. App. LEXIS 17960 at *14 (9th Cir. 2001) (*citing SSR 96-2p, 1996 SSR LEXIS 9); *see also Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996). When a treating or examining physician's opinion is

contradicted, that opinion can be rejected "for specific and legitimate reasons that are supported by substantial evidence in the record." *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1996) (*citing Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). The ALJ can accomplish this by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (*citing Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

      a.  Dr. D.S. Sager, M.D., treating rheumatologist

Dr. Sager was plaintiff's treating rheumatologist and submitted an opinion that plaintiff needed to lie down for one hour, 2 to 4 times a day, and would miss four or more days of work per month (*see* Tr. 344-45). The ALJ gave Dr. Sager's opinion little weight (*see* Tr. 17). The first reason provided by the ALJ for his failure to credit fully the opinions of Dr. Sager is that "Dr. Sager's opinion is granted little weight as it is not consistent with his treatment records which showed only minor effusion, the use of 'extreme terms' by the claimant in describing his pain, and the claimant tolerating passive joint movement" (*see id., citing* Exhibit 11F). As discussed below, this finding is based on substantial evidence in the record as a whole.

As noted by the ALJ, in July 2010, Dr. Sager's treatment record reveals that plaintiff recently had presented to the emergency room in May with described right knee effusion, and Dr. Sager indicates that plaintiff "uses extreme terms in describing findings, pain, difficulty with function" (*see* Tr. 317-18). Dr. Sager also indicates that his physical

1  examination of plaintiff indicated that plaintiff "has a small right knee effusion" (*see* Tr.

2  317). Dr. Sager opines that the "right knee may be mildly warm but there is no erythema

3  [and] he tolerates passive joint motion" (*see id.*). However, Dr. Sager noted erythema and

4  diffuse, but notable, swelling in the feet (*see* Tr. 317-18). In addition, on September 30,

5  2010, Dr. Sager's treatment notes indicate that plaintiff's gout was improving gradually

6  and plaintiff indicated at that time that he did "not feel there is any significant persistent

7  swelling in his lower extremity joints to examine today" (Tr. 314).

8          Based on the record as a whole, the Court concludes that the ALJ's finding that

9  Dr. Sager's treatment notes are inconsistent with his opinion that plaintiff needed to lie

10  down for one hour, 2 to 4 times a day, and would miss four more days of work per

11  month, is a finding based on substantial evidence in the record as a whole (*see* Tr. 17,

12  317-18, 344-45).

13          The ALJ also failed to credit fully opinions from Dr. Sager with the finding that

14  Dr. Sager's opinion is not consistent with the notes from Columbia pain management

15  "which showed the claimant actively engaging in gardening, riding bikes with his

16  grandkids, and having normal physical exams" (*see* Tr. 17). This finding, too, is

17  supported by substantial evidence in the record as a whole. For example, in February,

18  2012, plaintiff reported that he did not have any severe swelling flare since starting

19  Humira and also reported that he had "been out riding a bicycle and a dirt bike again"

20  (Tr. 367). At this time, plaintiff's gate was non-antalgic and revealed normal cadence and

21  stride (*id.*). Similarly, plaintiff's toe and heel walking were normal and he was able to

squat and rise without difficulty (*see id.*). It was noted that "postural examination in the sagittal and coronal planes is unremarkable"

Similarly on April 7, 2011, plaintiff reported being "busy in his garden" and his examination results indicated that his gait was non-antalgic and revealed normal cadence and stride (*see* Tr. 381). Again, toe and heel walking were normal; plaintiff could squat and rise without difficulty; and "postural examination in the sagittal and coronal planes is unremarkable" (*see id.*). Finally, in another earlier note cited by the ALJ, in August, 2010, plaintiff was feeling "much better" and had "gone back to work for a couple of days" (*see* Tr. 388). Plaintiff's gate was non-antalgic, with normal cadence and stride; and his toe and heel walking were normal (*see id.*). Again, plaintiff was able to squat and rise without difficulty, and his "postural examination session on coronal planes is unremarkable" (*see id.*).

The Court concludes that the ALJ's finding that Dr. Sager's opinion that plaintiff needed to lie down for one hour, 2 to 4 times a day, and would miss four more days of work per month is inconsistent with treatment notes from Columbia pain management is a finding based on substantial evidence in the record as a whole.

For the reasons discussed, and based on the record as a whole, the Court concludes that the ALJ provided specific and legitimate reasons for failing to credit fully the opinions of Dr. Sager.

b.  Dr. Dan Donohue, Ph.D., non-examining medical consultant

The ALJ gave significant weight to the opinion of nonexamining doctor, Dr. Donahue (*see* Tr. 18). Plaintiff complains that although the ALJ gave significant weight

to the opinions of Dr. Donohue, the ALJ did not include in his RFC or in his hypothetical to the VE, Dr. Donohue's opinions that plaintiff suffered from multiple moderate limitations in his ability to function in a normal work environment (*see* Opening Brief, ECF No.13 pp. 14-17; *see also* Tr. 14, 291-92).

Despite opining that plaintiff suffered from multiple moderate limitations in the ability to engage in full-time work, Dr. Donohue nevertheless opined that plaintiff could "carry out [simple routine tasks] but not complex tasks" (*see* Tr. 293; *see also* Tr. 291-92). Dr. Donohue also indicated his opinion that plaintiff "would do best working alone or [with] a small amount of coworkers" (*see* Tr. 293). Both of these opinions are included in the ALJ's formulation of plaintiff's RFC (*see* Tr. 14).

Although plaintiff complains because the ALJ did not include in his RFC Dr. Donohue's opinion regarding plaintiff's multiple moderate limitations, in a similar situation in which a claimant had complained that a moderate limitation as to pace was not accommodated into the RFC, the Ninth Circuit Court found no error due to the fact that the ALJ in *Stubbs-Danielson* had included the consultant's opinion from the narrative portion of a limitation to simple tasks into the RFC. *See Stubbs-Danielson, supra,* 539 F.3d at 1173-74. The situation here is analogous, as the ALJ credited Dr. Donohue's narrative opinion, but failed to include Dr. Donohue's opinion regarding moderate limitations in a different section of the opinion into the RFC. *See id.*

In addition, the Court notes that according to the internal operating manual of the Administration, the purpose of the summary conclusions in section 1, is to ensure that the evaluator considered each of the relevant mental activities, as well as any limitations on

these activities over a normal workweek, but that it "is the narrative written by the

psychiatrist or psychologist in section III ("Functional Capacity Assessment" ) . . . .

that [the] adjudicator [is] to use as the assessment of RFC." *See* Program Operations

Manual System (POMS), DI 25020.0100(B)(1), 2001 WL 1933437, available at

https://secure.ssa.gov/poms.nsf/lnx/0425020010, last visited July 17, 2014.

For the reasons stated and based on the relevant record, the Court finds no error in

the ALJ's evaluation of the opinions of Dr. Donohue.

(2)   **Did the ALJ commit reversible error by finding plaintiff only partially credible**?

Plaintiff complains only about one reason provided by the ALJ for his failure to

credit fully plaintiff's allegations and testimony. However, even if the ALJ's reliance on

plaintiff's activities of daily living when making his credibility determination was not

proper, the Court concludes that any error was harmless.

The Ninth Circuit has "recognized that harmless error principles apply in the

Social Security Act context." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012)

(*citing Stout v. Commissioner*, *Social Security Administration*, 454 F.3d 1050, 1054 (9th

Cir. 2006) (collecting cases)). The court noted that "several of our cases have held that an

ALJ's error was harmless where the ALJ provided one or more invalid reasons for

disbelieving a claimant's testimony, but also provided valid reasons that were supported

by the record." *Id.* (citations omitted). The Ninth Circuit noted that "in each case we look

at the record as a whole to determine [if] the error alters the outcome of the case." *Id.* The

court also noted that the Ninth Circuit has "adhered to the general principle that an ALJ's

error is harmless where it is 'inconsequential to the ultimate nondisability determination.'" *Id.* (*quoting Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008)) (other citations omitted). The court noted the necessity to follow the rule that courts must review cases "'without regard to errors' that do not affect the parties' 'substantial rights.'" *Id.* at 1118 (*quoting Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (*quoting* 28 U.S.C. § 2111) (codification of the harmless error rule)).

Here, the ALJ relied on plaintiff's repeated overuse of his pain medications and the related inference that plaintiff was over-reporting his pain symptoms in order to obtain more or different narcotic prescription medication, and also relied on a finding that plaintiff's allegations are inconsistent with the objective medical evidence when failing to credit fully plaintiff's allegations and testimony. As discussed below, the Court concludes that the ALJ's credibility determination is supported by substantial evidence in the record as a whole.

If the medical evidence in the record is not conclusive, sole responsibility for resolving conflicting testimony and questions of credibility lies with the ALJ. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1999) (*citing Waters v. Gardner*, 452 F.2d 855, 858 n.7 (9th Cir. 1971) (*Calhoun v. Bailar*, 626 F.2d 145, 150 (9th Cir. 1980)). An ALJ is not "required to believe every allegation of disabling pain" or other non-exertional impairment. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (*citing* 42 U.S.C. § 423(d)(5)(A) (other citations and footnote omitted)). Even if a claimant "has an ailment reasonably expected to produce *some* pain; many medical conditions produce pain not severe enough to preclude gainful employment." *Fair, supra*, 885 F.2d at 603. The ALJ

1    may "draw inferences logically flowing from the evidence." *Sample, supra*, 694 F.2d at

2    642 (*citing Beane v. Richardson*, 457 F.2d 758 (9th Cir. 1972); *Wade v. Harris*, 509 F.

3    Supp. 19, 20 (N.D. Cal. 1980)). However, an ALJ may not speculate. *See* SSR 86-8, 1986

4    SSR LEXIS 15 at *22.

5        Nevertheless, the ALJ's credibility determinations "must be supported by specific,

6    cogent reasons." *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) (*citing Bunnell v.*

7    *Sullivan*, 947 F.2d 341, 343, 346-47 (9th Cir. 1991) (*en banc*)).  In evaluating a claimant's

8    credibility, the ALJ cannot rely on general findings, but "'must specifically identify what

9    testimony is credible and what evidence undermines the claimant's complaints.'" *Greger*

10   *v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006) (*quoting Morgan v. Comm'r of Soc. Sec.*

11   *Admin.*, 169 F.3d 595, 599 (9th Cir. 1999)); *Reddick, supra*, 157 F.3d at 722 (citations

12   omitted); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) (citation omitted). The

13   ALJ may consider "ordinary techniques of credibility evaluation," including the

14   claimant's reputation for truthfulness and inconsistencies in testimony regarding

15   symptoms, and may also consider a claimant's daily activities, and "unexplained or

16   inadequately explained failure to seek treatment or to follow a prescribed course of

17   treatment." *Smolen, supra*, 80 F.3d at 1284 (citations omitted).

18       Here, plaintiff does not address in his opening brief two of the reasons provided by

19   the ALJ for the ALJ's credibility determination, and in his reply brief includes largely

20   plaintiff's subjective self-reports and testimony in support of his argument (*see* Reply,

21   ECF No. 15, pp. 8-11). The Court already has discussed, in part, the objective medical

22   evidence relied on by the ALJ, *see supra*, section 1. Based on a review of the record, the

1   Court concludes that the ALJ's finding that plaintiff's allegations and testimony are

2   inconsistent with the medical evidence is a finding based on substantial evidence in the

3   record as a whole.

4          In addition, a review of the record reveals that the ALJ's findings that plaintiff

5   violated his pain contract and overused his pain medications are findings based on

6   substantial evidence in the record as a whole (*see* Tr. 333-34, 365). For example, on

7   February 2, 2012, the record indicates that plaintiff "should have had three tabs

8   remaining today but states he's been out for one day" (*see* Tr. 367); and on July 9, 2010,

9   plaintiff reported being in pain and seeking a refill of his prescription, as he was "[o]ut of

10  everything" (Tr. 333).  However, a call to the pharmacist revealed that plaintiff "recently

11  [had] received narcotics  . . . . [and] did not disclose that he is on a pain contract" (*see*

12  *id.*).

13

14         For the reasons stated and based on a review of the record as a whole, the Court

15  concludes that the ALJ committed at most harmless error during the evaluation of

16  plaintiff's credibility. The Court concludes that the ALJ provided clear and convincing

17  reasons for his failure to credit fully plaintiff's allegations and testimony, despite any

18  possible error in the reliance on plaintiff's activities of daily living.

19         (3)   **Did the ALJ commit reversible error by erroneously rejecting the lay**
20               **opinions of James M. Patterson, LICSW**?

21         Plaintiff complains that the lay opinion by Mr. Patterson was rejected improperly.

22  The ALJ rejected this opinion, finding that it "is conclusory and lacks adequate

23

24

1   explanation" (*see* Tr. 18). The ALJ also noted that there were not any corresponding

2   treatment records from Mr. Patterson (*see id.*).

3       Pursuant to the relevant federal regulations, in addition to "acceptable medical

4   sources," that is, sources "who can provide evidence to establish an impairment," 20

5   C.F.R. § 404.1513 (a), there are "other sources," such as friends and family members,

6   who are defined as "other non-medical sources" and "other sources" such as nurse

7   practitioners, therapists and chiropractors, who are considered other medical sources[1], *see*

8   20 C.F.R. § 404.1513 (d). *See also Turner v. Comm'r of Soc. Sec*., 613 F.3d 1217, 1223-

9   24 (9th Cir. 2010) (*citing* 20 C.F.R. § 404.1513(a), (d)); Social Security Ruling "SSR"

10  06-3p, 2006 SSR LEXIS 5 at *4-*5, 2006 WL 2329939. An ALJ may disregard opinion

11  evidence provided by both types of "other sources," characterized by the Ninth Circuit as

12  lay testimony, "if the ALJ 'gives reasons germane to each witness for doing so." *Turner,*

13  *supra*, 613 F.3d at 1224 (*quoting Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001)); *see*

14  *also Van Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).

15      The Court concludes that the ALJ provided germane rationale for failing to credit

16  fully the lay opinion of Mr. Patterson. In rejecting this opinion, the ALJ noted a lack of

17  corresponding treatment records from Mr. Paterson, and plaintiff has not directed this

18  Court to evidence of Mr. Patterson's treatment records. Although plaintiff directs the

19  Court to plaintiff's own testimony that he often saw Mr. Patterson, the Court concludes

20

21

22  _____

23      [1] "Other sources" specifically delineated in the relevant federal regulations also
    include public and private "social welfare agency personnel," *see* 20 C.F.R. §
24  404.1513(d)(3).

1   that the ALJ's finding that Mr. Patterson's opinion was not supported by corresponding

2   treatment records is a finding based on substantial evidence in the record as a whole. The

3   Court also concludes that this is a germane reason for failing to credit fully the opinion of

4   Mr. Patterson.

5           In addition, a review of Mr. Patterson's opinion reveals only checked boxes and

6   no explanation in support of his opinion (*see* Tr. 346-48). Thus, this reason provided by

7   the ALJ for his rejection of Mr. Patterson's opinion also is based on substantial evidence

8   in the record. The Court concludes that it also is germane.

9

10                                    CONCLUSION

11          Based on the stated reasons and the relevant record, the Court **ORDERS** that this

12   matter be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

13          **JUDGMENT** should be for DEFENDANT and the case should be closed.

14          Dated this 21st day of July, 2014.

15

16          _____

17          J. Richard Creatura
             United States Magistrate Judge

18

19

20

21

22

23

24

ORDER ON PLAINTIFF'S COMPLAINT - 14